**MONTGOMERY K. FISHER**
Senior Counsel, Office of Investigations
Office of Inspector General
National Science Foundation
4201 Wilson Boulevard
Arlington, VA 22230
telephone: 703-292-4987
fax: 703-292-9162
email: mfisher@nsf.gov

**Representative of Respondent**
**NATIONAL SCIENCE FOUNDATION INSPECTOR GENERAL**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WINNER,<br>        a/k/a MICHAEL WEINER,<br>        a/k/a JIM LONSDALE,<br><br>              Movant,<br><br>      v.<br><br>INSPECTOR GENERAL OF THE<br>NATIONAL SCIENCE FOUNDATION,<br><br>              Respondent<br>_____/ | No. C-07-80212 MISC MMC<br><br>**SWORN RESPONSE TO MOTION FOR ORDER PURSUANT TO CUSTOMER CHALLENGE PROVISIONS OF THE RIGHT TO FINANCIAL PRIVACY ACT** |

I.      **Background**

        I am the Senior Counsel, Office of Investigations, Office of Inspector General (OIG), National Science Foundation (NSF).  I received a Ph.D. in Chemistry from the University of Texas at Austin, and a J.D. from Columbia Law School.  I am a member of the bar of the District of Columbia.  I have worked for the NSF OIG since September 1990.  My primary responsibilities are providing legal advice concerning investigations and conducting investigations.

NSF is an independent federal agency promoting science and engineering research and education through grants and programs with an annual budget of approximately $6 billion. The NSF OIG is an independent entity within NSF authorized by the Inspector General Act to investigate allegations of waste, fraud, and abuse on behalf of NSF.

## II.    NSF OIG Subpoena No. 2007-0015 & the Challenge

The NSF Inspector General (IG), Dr. Christine Boesz, issued *subpoena duces tecum* No. 2007-0015 to JPMorganChase on 22 August 2007, "in connection with an investigation relating to the impersonation of a federal official and misuse of a federal agency seal," requesting "all documents and information pertaining to VISA account number 4246-3151-2591-4596, account name Michael K. Winner [Movant], including detailed records of all charges." I am the lead on the investigation of Movant, and I prepared the subpoena signed by the NSF IG. I caused the subpoena to be served on JPMorganChase (by fax and FedEx), and provided Movant with concomitant notice (by email and FedEx), in full compliance with the Right to Financial Privacy Act (RFPA), 12 U.S.C. §§ 3401-3422.

Movant challenges the subpoena. Under 12 U.S.C. § 3410(a)(2), such a challenge must "stat[e] the applicant's reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice, or that there has not been substantial compliance with the provisions of this title." Movant does not argue that there has not been substantial compliance with the provisions of the RFPA. However, Movant argues that (1) "There is an insufficient showing that the requested financial records are relevant to the investigation" because the language in the subpoena "lacks specificity;" and (2) the subpoena "is over-broad in that there is no showing that my *entire* financial history pertaining to VISA account number 42[46]-3151-2591-4596 is necessary for the stated investigation. An appropriate time frame should be stated in the Subpoena Duces Tecum."

To the contrary, the VISA records sought by the NSF IG subpoena are highly relevant to our investigation of Movant's impersonation of a federal official, in violation of 18 U.S.C. § 912, and misuse of a government seal, in violation of 18 U.S.C. §§ 701, 506(a)(2), and 1017.

**III.    Findings from NSF OIG's Investigation**

To explain the relevance of Movant's credit card charges to his activities impersonating an NSF official and misusing NSF's seal, I must describe our findings in this unusual case in some detail.  Through investigation, we determined that, between April 2003 and August 2006, Movant placed 24 advertisements on the internet site sfbay.craigslist.org, recruiting people to help with a spurious "research" project.  In 8 of those 24 advertisements, Movant specifically falsely stated that the research was being carried out under the auspices of NSF.

To date, we have been able to identify 3 individuals who responded to Movant's advertisements.  To each of these 3 women, Movant sent multiple emails identifying himself (with a false name) as an NSF official:

> Jim Lonsdale
> Director Pacific Region, Independent Research
> National Science Foundation Behavioral Research.

Movant sent to the women electronic copies of numerous elaborate "protocols" that he prepared, into each of which he incorporated the NSF seal to make them appear to be official NSF documents, e.g.:



Example of Movant's Misuse of NSF Seal

In his emails, Movant (as NSF official "Jim Lonsdale") tried to persuade the women to meet a "patient," identified as "Michael" (Movant's name), in a hotel room for the purpose of researching the effects of an inhibition-reducing medication.  In the hotel room, the women would find the waiting "patient" (Movant), who had ostensibly already been given the

medication (in reality, there was no medication). The women were to follow detailed instructions in the protocols (written by Movant) during 2-hour "sessions," to explore the effects of the medication. Movant's protocols required the women to tell the "patient" what to do, step by step, and to take notes about—and indeed videotape—his responses and actions. Under Movant's protocols, the women were to direct the "patient" (Movant) to disrobe, bathe, urinate and defecate, and masturbate; "advanced" protocols (for "Session 6 or 7") specified further activities:

> NSF will provide resources for sexual behavior observation for these types of sessions. NSF will arrange for one or two males to arrive at location at a pre-arranged certain time, while patient [Movant] is heavily induced, for this role testing. . . . The patient [Movant] will be instructed and will engage by command, full sexual activity with these visitors. Transcripts of concurrent testing are available and exact instructions will be provided. These sessions will be graphic and sexual behavior must be tested. Your patient [Movant] will be engaged in full sexual activity with one and then two concurrent individuals, safe sex will be required.

The women were not supposed to participate actively in these "research" activities themselves, but only to direct, observe, and record. Movant told them that NSF would pay them for their efforts.

One of the 3 women declined to meet the "patient" in a hotel room. The second woman participated in 4 "sessions," and the third woman, recruited specifically for her videography skills, participated in the 3rd and 4th "sessions" with the second woman. As instructed, at the end of each "session" the women left the session notes and videotape in the room with the "patient," and Movant retained them.

Before the sessions began, Movant required the second and third women to sign a "National Science Foundation Non-Disclosure Agreement" (NSF NDA). The NSF NDA prohibited the women, under the authority of NSF, from disclosing anything about their activities, and threatened that NSF would take "legal or equitable" action against them if they were to do so. Despite the NSF NDA, the second and third women contacted NSF, which referred the information to the NSF OIG for investigation.

**IV.    Relevance of the Information Sought to NSF OIG's Investigation**

    **A.    Substantive Relevance**

    Movant represented himself as an NSF official and misused NSF's seal, in order to recruit women interested in participating in scientific research, and to entice them into meeting him in hotel rooms.  Once in those hotel rooms, Movant exposed the women he had recruited to depraved, disturbing, and lewd conduct, using his apparent NSF authority to swear them to secrecy.  Movant is a computer expert (he is currently employed as the Chief Technology Officer of a computer technology company), and he used sophisticated means to hide his identity from the women he victimized—and to hide the identity of his victims from our investigation.

    While we have ample proof of Movant's impersonation of an NSF official, and his misuse of NSF's seal, with regard to three women, we do not know how many additional women responded to his advertisements and were recruited through his impersonation.  We know that he spent at least three years trying to lure women to hotel rooms, under the guise of NSF research, to participate in these despicable acts, but we do not know the full extent to which he was successful.

    Of the four sessions we are aware of, Movant used the same VISA card to charge the hotel room for at least three of them, and that card account is the target of our subpoena.  If Movant convinced other women to meet him in hotel rooms, under the guise of NSF research, it is likely that he used the same VISA card to charge those rooms as well.  We need the records of charges using that card to be able to assess the scope of Movant's criminal conduct, and to endeavor to repair the damage done by Movant's misrepresentations.  We have not sought any other bank or credit card records from Movant, only those for the specific card we know he used on three occasions in furtherance of his illegal activities.

    **B.    Time Period**

    The period of time for which the VISA records are provided should not be limited, because we have no way of knowing how long Movant has engaged in this conduct.  His use of craigslist began in April 2003, but that may be simply because that was when he became aware of that resource; before that, he may have used other internet sources such as chat-rooms, or he

may have used newspaper print classified or personal ads, or university or community bulletin boards. Movant's use of this VISA card to pay for the hotel rooms may have been a constant while the means he used to recruit new victims may have evolved. Accordingly, the VISA records for the entire duration of that account are relevant to our investigation.

## V. Conclusion

The credit card records we are seeking from JPMorganChase will help us assess the scope of Movant's criminal conduct. In addition, the records may enable us to notify the other women victimized by Movant's conduct (we do not know how many: several? dozens? scores?) that their abhorrent experiences with Movant were in fact neither authorized nor sanctioned by NSF and are in no way representative of authentic scientific research carried out or sponsored by NSF or anyone else.

When I spoke to Movant in May 2006, he said he wanted to cooperate with our investigation—but in those conversations he lied repeatedly and denied that he had ever represented himself as an NSF official or used NSF's seal in documents in furtherance of such deception. He falsely denied even knowing what NSF was, and falsely claimed that he had had his identity and computer stolen (implying that someone else committed his crimes). He said he had used craigslist to meet women in hotel rooms, but falsely claimed he grew uncomfortable with it and tried to stop, and he even went so far as to falsely assert that it was the women (his victims) who had pressed him to continue because they wanted more money.

At that time, Movant told me he would go through his records and provide to us any relevant documents he could find, but he subsequently declined to do so. We provided a substantial quantity of evidence to Movant's counsel about his conduct, and have received nothing in return. Movant should not be allowed to hide his crimes by restricting our ability to obtain relevant records elsewhere that he has withheld in an ongoing effort to hide the scope of his wrongdoing. Movant has created an odious misperception in his victims that acting out his bizarre sexual fantasies and having them filmed was a legitimate part of NSF scientific research. Movant should not be allowed to prevent NSF, also a victim, from correcting the abhorrent and repellent view that he instilled in an untold number of women that it was the United States

Government, and specifically the National Science Foundation, that authorized him to engage in his deviant behavior.

I declare under penalty of perjury that the foregoing is true and correct.

_____/S/_____                          _____
Montgomery K. Fisher, J.D., Ph.D.                                              Date
Senior Counsel
Office of Inspector General
National Science Foundation

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I declare under penalty of perjury that I served a copy of this SWORN RESPONSE TO MOTION FOR ORDER PURSUANT TO CUSTOMER CHALLENGE PROVISIONS OF THE RIGHT TO FINANCIAL PRIVACY ACT to Douglas L. Rappaport, attorney for Movant Michael Winner, on 14 September 2007 via email and CAND-ECF.

_____/S/_____
Montgomery K. Fisher